IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

| | |
|---|---|
| TIMOTHY E. VUYANICH *et al.*, | |
| *Plaintiffs,* | Civil Action No. 2:19-cv-1342 WSS |
| v. | Hon. William S. Stickman IV |
| SMITHON BOROUGH *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs Timothy E. Vuyanich and Carol L. Vuyanich brought this action asserting claims against several Defendants, public and private, relating to the involuntary clean-up of vehicles and other personal property from their land. (ECF No. 1). The Court previously considered motions to dismiss filed by Defendants Smithton Borough and South Huntingdon Township ("Defendant municipalities") and, on April 1, 2020, issued a Memorandum Opinion and Order dismissing the entire case with prejudice due to the application of the *Rooker-Feldman* doctrine. (ECF Nos. 47 and 48). All of the other Defendants' motions—including a Motion to Dismiss for Failure to State a Claim filed by Defendant Harry F. Thompson's Garage ("Thompson's Garage")—were dismissed as moot. (*Id.*). Plaintiffs appealed and, on July 27, 2021, the United States Court of Appeals for the Third Circuit reversed and remanded, holding that the *Rooker-Feldman* doctrine did not apply to bar Plaintiffs' claims. (ECF Nos. 54 and 55). On August 28, 2021, the Court reopened the case. (ECF No. 55).

Defendant Jarvis Auto and Truck Salvage ("Jarvis Salvage") filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 60). On January 24, 2022, the Court granted the

1

motion and dismissed the § 1983 claims lodged against Jarvis Salvage at Counts II and III. The Court chose not to exercise supplemental jurisdiction over the state law claims against Jarvis Salvage at Counts V and VI and it dismissed those claims without prejudice, and it also dismissed the claim for punitive damages against Jarvis Salvage contained in Count VII. (ECF Nos. 70 and 71). The dismissal at Counts II and III was without prejudice to amend to the extent that Plaintiffs could plead additional facts that would plausibly bring Jarvis Salvage's conduct into the definition of state action outlined in *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). An amended complaint was not filed, and Jarvis Salvage was terminated as a party in this matter on February 15, 2022. Discovery has commenced, and it is set to close on November 23, 2022. (ECF No. 84).

Thompson's Garage filed a Motion for Judgment on the Pleadings Pursuant to Fed. R. Civ. P. 12(c), and a supporting brief. (ECF Nos. 73 and 74). Briefing is complete and the motion is ripe for adjudication. For the following reasons, the Court will grant the motion. (ECF No. 72).

## I.   FACTUAL BACKGROUND

Plaintiff Timothy E. Vuyanich ("Tim") and his mother, Plaintiff Carol L. Vuyanich ("Carol"), reside at 303 Third Street, Smithton, Pennsylvania 15479 ("the property"). (ECF No. 1, ¶¶ 1–2). The property intersects with the territory of two different municipalities in Westmoreland County, Pennsylvania: South Huntingdon Township ("South Huntingdon") and Smithton Borough ("Smithton"). (*Id.* ¶¶ 3, 12, 22). Both municipalities are entitled to enforce local ordinances as to the property. (*Id.* ¶ 28).

On July 17, 2018, the Commonwealth of Pennsylvania, through the District Attorney's Office for Westmoreland County, Pennsylvania, brought seven criminal charges against Tim for abandoning vehicles and garbage on his property in violation of 18 Pa. C.S.A. § 6504, 75 Pa.

C.S.A. § 3712, and 18 Pa. C.S.A. § 6502. (*Id.* ¶ 36). *See* Docket at 2, *Commonwealth v. Vuyanich*, CP-65-CR-0003869-2018 (Ct. Com. Pls., Westmoreland Cnty., Pa. Mar. 5, 2020).

On June 18, 2019, the Honorable Christopher A. Feliciani of the Court of Common Pleas of Westmoreland County held a status conference on Tim's criminal case. (ECF No. 1-14). Tim was present and represented by Westmoreland County Public Defender Alan Manderino. (*Id.*). The case was continued in the hope that Tim would cooperate in the cleanup of his property and that the case might be dismissed. (ECF No. 1, ¶ 76; ECF No. 1-14). Judge Feliciani ordered that Tim had twenty days to remove personal items from the abandoned vehicles on the property or any other property he wanted to retain before the Borough would begin the cleanup process. (*Id.*). Judge Feliciani stated:

> They've been trying to get it cleaned up for months, if not longer. So I'm thinking 20 days. You guys hold off for 20 days. Whatever he needs to get out of his vehicles, he needs to do within the next 20 days. *Otherwise on day 21, the borough is going to be authorized to go in and start removing vehicles, or whatever else is on the property.*
>
> \*   \*   \*
>
> The defendant is granted 20 days from today's date to remove any personal items that he wants from the vehicles on his property or any other property that he wants to retain. *After 20 days expires, the borough will be authorized to go in and start the clean up[sic] process.*

(ECF No. 1-14, pp. 5-6) (emphasis added). The written order issued by Judge Feliciani stated in pertinent part, "Def. has 20 days to remove his personal items from property." (ECF No. 1-15).

On or about July 9, 2019, after the twenty-day period set forth in Judge Feliciani's order expired, the cleanup process commenced. (ECF No. 1, ¶ 91). Smithton Police Department ("SPD") Chief Michael R. Natale ("Natale"), SPD Patrolman Ralph D. Marsico Jr. ("Marsico"), and South Huntingdon Supervisors Eddie Troup ("Troup"), Matthew Jennewine ("Jennewine"), and Richard Gates ("Gates") entered Plaintiffs' property between July 9, 2019 and September 27, 2019, to begin clearing the land. To aid in the cleanup, Smithton hired Dale H. Cooper, a

3

contractor, to help remove abandoned vehicles and clear other materials from the land. (*Id.* ¶¶ 41-52). Cooper, in turn, contracted with Thompson's Garage, a tow truck operating subcontractor, to assist in the cleanup. (*Id.* ¶ 99). Thompson's Garage towed a 1997 Oldsmobile Silhouette from the property. (*Id.* ¶ 99). It charged Plaintiffs $150.00 for towing, which Plaintiffs paid. When told by Thompson's Garage that they would be charged a $55.00 daily storage fee, Plaintiffs gave the Oldsmobile to Thompson's Garage because they wanted to avoid the fee and did not want it to be towed again if they brought it back to their property or the adjacent public road. (*Id.* ¶¶ 100-01).

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), once the pleadings are closed, but within such time as to not delay trial, a party may move for judgment on the pleadings. A party may use a motion for judgment on the pleadings under Rule 12(c) as a vehicle for raising several of the defenses enumerated in Federal Rule of Civil Procedure Rule 12(b) ("Rule 12b"). *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). The standard of review is identical to that of a motion to dismiss under Rule12(b)(6).[1] *Turbe*; *see also Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). The only difference is that, on a motion for judgment on the

---

[1] A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

pleadings, the court reviews not only the complaint, but also the answer and written instruments attached to the pleadings. *Iseley v. Talaber*, No. 5-cv-444, 2008 WL 906508, at *2 (M.D. Pa. Mar. 31, 2008) (citation omitted). The court should consider the allegations in the pleadings, the exhibits attached thereto, matters of public record, and "undisputedly authentic" documents if a plaintiff's claims are based on such documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 889 F.2d 1192, 1196-97 (3d Cir. 1993); *see also Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (providing that a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint, even if they are not attached thereto, without converting the motion into one for summary judgment). However, because a Rule 12(c) "motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in the nonmonvant' s favor. *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

When a Rule 12(c) motion is not used to raise Rule 12(b) defenses, judgment on the pleadings under Rule 12(c) is not appropriate "'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 193 (3d Cir. 1999) (quoting *Kruzits v. Okuma Machine Tool, Inc.*, 40 F.3d 52, 54 (3d Cir. 1994)). Motions under Rule 12(c), that are not used to raise certain 12(b) defenses, require a determination on the merits of the case and "should be granted only where it is clear that the merits of the controversy can be fairly and fully decided in such a summary manner." *In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp. 2d 357, 358 (W.D. Pa. 2006).

### III.   ANALYSIS

Thompson's Garage seeks judgment on the pleadings as to the federal claims raised against it in Counts II and III, the state claims against it in Counts V and VI, and the claim for punitive damages raised against it at Count VII. As to the federal claims, Thompson's Garage asserts that it cannot be liable under § 1983 because it is not a state actor. In the alternative, it argues that Plaintiffs have failed to plead plausible constitutional violations. Thompson's Garage urges the Court not to exercise supplemental jurisdiction over the state law claims. (ECF No. 74). At this juncture, the Court can make the determination that Plaintiff's claims at Counts II and III are precluded as a matter of law based upon the pleadings alone. They will be dismissed, and the Court will decline to exercise jurisdiction over the state law and punitive damage claims against Thompson's Garage.

**A.   PLAINTIFFS CANNOT MAINTAIN THEIR CLAIMS AGAINST THOMPSON'S GARAGE UNDER 42 U.S.C. § 1983 BECAUSE THOMPSON'S GARAGE IS NOT A STATE ACTOR AND WAS NOT ACTING UNDER THE COLOR OF STATE LAW.**

"Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States].'" *Halsey v. Pfeiffer*, 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983). To obtain relief under § 1983, a plaintiff must show that he suffered "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)). § 1983 applies to the conduct of state actors. In general, it does not apply to the conduct of private parties. However, a private party may incur liability under § 1983 if it was acting under the color of state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941 (1982).

6

"Although a private person may cause a deprivation of [a constitutional] right, he may be subjected to liability under § 1983 only when he does so under color of law." *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted). In *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001), the Supreme Court held that "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" (citation omitted). The inquiry into whether a private individual or association was acting under the color of law is fact-specific. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995) (citations omitted). To conduct this analysis, the Third Circuit has "outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists," which are as follows:

> (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials"; and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity."

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (citation omitted). These tests are commonly referred to as (1) the public function test, (2) the close nexus test, and (3) the symbiotic relationship test. Another test, commonly referred to as the "joint action test," asks whether a private entity was a willful participant in joint action with the state or its agents." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 941-42 (1982). In deciding whether state action has occurred, the central purpose of the inquiry is to "assure that constitutional standards are invoked 'when it can be said that the State is *responsible* for the specific conduct of which plaintiff complains.'" *Brentwood*, 531 U.S.

at 295 (citation omitted) (emphasis in original). "Action taken by private entities with the mere approval or acquiescence of the State is not state action." *American Mfs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 52 (1999) (citation omitted).

There is no dispute that Thompson's Garage is a private entity. (ECF No. 1, ¶ 8) ("Harry F. Thompson's Garage, Incorporated ("Thompson's Garage") is a Pennsylvania corporation [. . .]."). The Court must determine whether Plaintiffs have plausibly pled that Thompson's Garage was acting under the color of state law when it engaged in the conduct alleged in the Complaint. There are few allegations specifically focused on Thompson's Garage. Only the following allegations about Thompson's Garage's specific conduct relating to the cleanup are made:

> 97. Chief Natale, on July 10, 2019, completed an abandoned vehicle form for a 1997 Oldsmobile Silhouette belonging to Tim that was parked on a public road in front of the Property. (Ex. 17.)
>
> 98. Chief Natale claimed authority to take the 1997 Oldsmobile Silhouette based on the June 18, 2019 status conference court order and also stated that he gave notice verbally to Tim. (Id.)
>
> 99. The 1997 Oldsmobile Silhouette was then towed away by a subcontractor Cooper contracted with, Thompson's Garage.
>
> 100. Thompson's Garage charged Plaintiffs $150.00 for towing their 1997 Oldsmobile Silhouette, which they paid, and were told that a $50.00 daily storage fee would be required by Thompson's Garage for their 1997 Oldsmobile Silhouette.
>
> 101. Plaintiffs wanted to avoid Thompson's Garage's $50.00 daily storage fee and were concerned that their 1997 Oldsmobile Silhouette would be towed again if they brought it back to their Property or parked it on the public road immediately adjacent to their Property, so they gave the 1997 Oldsmobile Silhouette to Thompson's Garage.

(ECF No. 1, ¶¶ 97-101). For the following reasons, the Court holds that these allegations fail to plausibly allege that Thompson's Garage was acting under the color of state law when it towed one vehicle from a public road adjacent to Plaintiffs' property.

### 1. Thompson's Garage was not exercising powers that are traditionally the exclusive prerogative of the state.

The allegations pled against Thompson's Garage cannot plausibly support a finding that it was exercising "powers that are traditionally the exclusive prerogative of the state." *Kach*, 589 F.3d at 646. The Supreme Court has explained that this is a high bar. It observed, that "[w]hile many functions have been traditionally performed by governments, few have been 'exclusively reserved to the state.'" *Flagg Brothers*, 436 U.S. at 158. The Third Circuit has noted that the exclusive function test "imposes a 'rigorous standard' that is 'rarely...satisfied,' for '[w]hile many functions have been traditionally performed by governments, very few have been exclusively reserved to the State.'" *Robert S. v. Stetson School, Inc.*, 256 F.3d 159, 165–66 (3d Cir. 2001) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)) (internal citations omitted). Thompson's Garage, a private towing company, is alleged to have done just that—towed one vehicle from a public road adjacent to Plaintiffs' property. The operation of tow trucks—even when used to clear vehicles at the behest of law enforcement—is not a function that is "traditionally the exclusive prerogative of the state." *Kach*, 589 F.3d at 646. Courts have held that functions with a far greater connection to traditional state authority do not fall within the "rigorous" and "rarely satisfied" exclusive function test. *See Kach* (school security services); *Black by Black v. Indiana Area Sch. Dist.*, 985 F.2d 707 (3d Cir. 1993) (school bus driver, school bus, school bus company, school bus company president); *Groman* (volunteer first aid squad). Plaintiffs have failed to plead any circumstances that would permit a finding that Thompson's Garage was exercising a function that is traditionally the function of the state. Therefore, they have not satisfied the first test for establishing that Thompson's Garage was acting under the color of state law.

### 2. Thompson's Garage was not working with the help of or in concert with the Defendant municipalities.

The second test set forth in *Kach* asks "whether the private party has acted with the help of or in concert with state officials." *Kach*, 589 F.3d at 646. In applying this test, it is important to recognize that merely working under a contract with a public entity toward ends directed by the entity will not establish state action. "Acts of … private contractors do not become acts of the government by reason of their significant or even total engagements in performing public contracts." *A.L. v. Eichman*, 376 F. Supp. 3d 547, 561 (W.D. Pa. 2019) (quoting *Rendell-Baker v. Kohn,* 457 U.S. 830, 841 (1982)). A factor that courts examine under this test is the degree of collaboration and control in the relationship between the state actor and the private entity. *See e.g. A.L.* 376 F. Supp. 3d at 560–61.

The allegations in the Complaint do not plausibly support a finding that Thompson's Garage was acting with the help of or in concert with state officials when it towed vehicles from Plaintiffs' property. Merely having a contract with the government does not render a private party a state actor. Here, the relationship between the Defendant municipalities and Thompson's Garage is even more attenuated. Thompson's Garage did not contract with the Defendant municipalities. It was hired by Defendant Dale Cooper ("Cooper"), another private entity. (ECF No. 1, ¶ 99). Plaintiffs readily admit these facts. (ECF No. 87). The only allegations against Thompson's Garage are that it towed a 1997 Oldsmobile Silhouette after police officers completed an abandoned vehicle form. These allegations do not show action in concert that would confer state actor status upon Thompson's Garage. The relationship alleged between Thompson's Garage and the police officers is, at best, tenuous. Conferring state actor status upon Thompson's Garage would render every tow operator that tows a vehicle at the request of a police department a state actor (definitely, unlike here, in those instances where the tow operator is actually hired by the

police). The law requires far more interaction, assistance and action in concert for a private party to act under the color of state law. For these reasons, Plaintiffs have not satisfied the second test for establishing that Thompson's Garage was acting under the color of state law.

### 3. Defendant municipalities have not so far insinuated themselves into a position of interdependence with Thompson's Garage that they must be recognized as joint participants.

The facts pled by Plaintiffs cannot support a finding of state action under the third test—"whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach*, 589 F.3d at 646. The *Kach* court explained:

> Under that test, "state action will be found if there is a sufficiently close nexus between the state and the *challenged* action of the regulated entity so that the action may be fairly treated as that of the State itself." *Boyle v. Governor's Veterans Outreach & Assistance Ctr.,* 925 F.2d 71, 76 (3d Cir. 1991) (emphasis in original and internal quotation marks and citation omitted). "[T]he purpose of this requirement is 'to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the *specific conduct* of which the plaintiff complains.'" *Id.* (some emphasis in original) (quoting *Blum*, 457 U.S. at 1004, 102 S.Ct. 2777). "Acts of private contractors do not become acts of the State simply because they are performing public contracts. The State will be held responsible for a private decision only when it has *exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed that of the State*." *Id.* (emphasis supplied and internal quotation marks and citations omitted).

*Kach*, 589 F.3d at 648 (emphasis in original).

The facts pled against Thompson's Garage do not permit a finding that Defendant municipalities and their agents so far insinuated themselves into a position of interdependence with Thompson's Garage that they must be recognized as joint participants in the challenged activity. Again, to so find would render every tow truck operator that tows a vehicle at the behest of a state actor to be, itself, acting under the color of state law. As pled, Thompson's Garage had no direct relationship with Defendant municipalities. It is alleged only to have had a subcontract with

11

Cooper, another private party. The Court holds that Plaintiffs have not satisfied the third test. There was not a relationship of interdependence pled between Thompson's Garage and Defendant municipalities that could plausibly warrant a finding that Thompson's Garage was acting under the color of state law.

Plaintiffs have failed to plausibly plead any facts that could support a determination that Thompson's Garage was acting under the color of state law when it removed vehicles from their property. Because § 1983 claims require state action and none exists here as to Thompson's Garage, Counts II and III against Thompson's Garage will be dismissed with prejudice.

### B. THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS AGAINST THOMPSON'S GARAGE.

When a district court has supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(a), it has the discretion to exercise or decline to exercise this jurisdiction. *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 311 (3d Cir. 2003). The statute provides that a district court "may decline to exercise supplemental jurisdiction" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995).

Since the Court has dismissed all of the federal law claims against Thompson's Garage and the remaining claims are state law claims, judicial economy, convenience, and fairness to the parties weigh against the Court retaining supplemental jurisdiction. There are no "extraordinary circumstances" which warrant the exercise of jurisdiction over the state claims against Thompson's Garage. The Court declines to exercise supplemental jurisdiction. Plaintiffs' pendent

state law claims against Thompson's Garage (Counts V and VI) are dismissed without prejudice to raise them in state court. Accordingly, Count VII against Thompson's Garage–*i.e.,* Plaintiffs' claim for punitive damages–will also be dismissed as no claims (state or federal) remain.

### 4. CONCLUSION

For the aforementioned reasons, Thompson's Garage's Motion for Judgment on the Pleadings will be granted. An Order of Court will follow.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

4-25-22
Date