IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TIMOTHY E. VUYANICH, *et al*, <br><br> *Plaintiffs*, <br><br> v. <br><br> SMITHTON BOROUGH, *et al*, <br><br> *Defendants*. | Civil Action No. 2:19-cv-1342 <br><br> Hon. William S. Stickman IV |

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiffs Timothy E. Vuyanich and Carol L. Vuyanich brought this action asserting claims against several Defendants, public and private, relating to the involuntary clean-up of vehicles and other personal property from their land.[1] (ECF No. 1). The parties are engaged in discovery, which closes on November 23, 2022. (ECF No. 84). Pending before the Court are the Motions for Judgment on the Pleadings filed by Smithton Borough, Chief Michael R. Natale ("Chief Natale") and Patrolman Ralph R. Marsico, Jr. ("Patrolman Marsico") (collectively "the Smithton Defendants") as well as South Huntingdon Township and Supervisors Eddie Troup ("Troup"), Matthew Jennewine ("Jennewine") and Richard Gates ("Gates") (collectively, "the South Huntingdon Defendants"). (ECF Nos. 79 and 85). Both sets of Defendants argue that Plaintiff Timothy Vuyanich's conviction for Public Nuisance, in violation of 18 Pa.C.S.A. § 6504, at CP-65-CR-0003869-2018 in the Court of Common Pleas of Westmoreland County, Pennsylvania,

---

[1] The facts underlying Plaintiffs' Complaint have been summarized previously by the Court at ECF No. 47 on pages one through four. The Court of Appeals for the Third Circuit also summarized the relevant facts in its July 27, 2021 Opinion at ECF No. 55-1 on pages four through eight. Those factual recitations are incorporated herein.

1

collaterally estops Plaintiffs from pursuing the claims asserted in this action. Additionally, they contend that Plaintiffs have not set forth plausible claims at Counts I through IV that the cleanup violated their rights under 42 U.S.C. § 1983 and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.[2] After careful consideration of the parties' pleadings, the Court disagrees. It will deny Defendants' motions, and allow the case to continue through discovery.

## I. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)"), once the pleadings are closed, but within such time as to not delay trial, a party may move for judgment on the pleadings. A party may use a motion for judgment on the pleadings under Rule 12(c) as a vehicle for raising

---

[2] Count I, "Violation of Plaintiffs' Procedural Due Process Rights Under the Fourteenth Amendment of the 1787 United States Constitution," is directed at Smithton Borough, South Huntington Township, and Chief Natale. (ECF No. 1, pp. 23-28). Count II, "Violation of Plaintiffs' right to not be subject to Unreasonable Searches and Seizures Under the Fourth Amendment of the 1787 United States Constitution," is directed at Smithton Borough, Chief Natale, and Patrolman Marsico. (*Id.*, pp. 29-34). Count III, "Violation of Plaintiffs' Right to be Provided Just Compensation for the Taking of their Property for a Public Use Under the Fifth Amendment of the 1787 United States Constitution," is directed at Smithton Borough. (*Id.*, pp. 34-38). Count IV, "Violation of Plaintiffs' right to not be subject to Unreasonable Searches and Seizures Under the Fourth Amendment of the 1787 United States Constitution," is directed at Smithton Borough, Chief Natale, South Huntington Township and Supervisors Troup, Jennewine, and Gates. (*Id.*, pp. 38-41).

Counts V and VI are not directed against any of the remaining Defendants – either the Smithton Defendants or the South Huntington Defendants. Count V, "Conversion of Plaintiffs' Personal Property Items," was directed at Dale H. Cooper, Marsh Auto Salvage, Inc., Harry F. Thompson's Garage, Inc., Jarvis Auto & Truck Salvage, and R&R Auto Recycling. (*Id.*, pp. 42-43). Count VI, "Trespass Upon Land," was directed against Dale H. Cooper, Marsh Auto Salvage, Inc., Jarvis Auto & Truck Salvage, and R&R Auto Recycling. (*Id.*, pp. 43-44). Default judgment was entered against Marsh Auto Salvage, Inc. and R&R Auto Recycling on January 2, 2022, for their failure to plead or otherwise defend. (ECF No. 28). Default judgment was entered against Dale H. Cooper on January 22, 2020, for his failure to plead or otherwise defend. (ECF No. 45). Jarvis Auto & Truck Salvage was terminated as party on February 15, 2022, after the Court granted its Motion to Dismiss. (ECF Nos. 70-72). Harry F. Thompson's Garage, Inc. was terminated as a party on April 25, 2022, after the Court granted its Motion for Judgment on the Pleadings. (ECF Nos. 90 and 91).

several of the defenses enumerated in Federal Rule of Civil Procedure Rule 12(b) ("Rule 12b"). *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). The standard of review is identical to that of a motion to dismiss under Rule12(b)(6).[3] *Turbe*. The only difference is that, on a motion for judgment on the pleadings, a court reviews not only the complaint, but also the answer and written instruments attached to the pleadings, matters of public record, and "undisputedly authentic" documents if a plaintiff's claims are based on such documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993); *see also Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (providing that a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint, even if they are not attached thereto, without converting the motion into one for summary judgment). However, because a Rule 12(c) "motion calls for an assessment of the merits of the case at an embryonic stage, a court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in the nonmovant's favor. *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006).

---

[3] A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows a court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

When a Rule 12(c) motion is not used to raise Rule 12(b) defenses, judgment on the pleadings under Rule 12(c) is not appropriate "'unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'" *CoreStates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 193 (3d Cir. 1999) (quoting *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 54 (3d Cir. 1994)). Motions under Rule 12(c), that are not used to raise certain 12(b) defenses, require a determination on the merits of the case and "should be granted only where it is clear that the merits of the controversy can be fairly and fully decided in such a summary manner." *In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp. 2d 357, 358 (W.D. Pa. 2006).

## II.   ANALYSIS

### A.   Collateral Estoppel

The Smithton Defendants and the South Huntingdon Defendants argue that Plaintiffs' action is precluded by the doctrine of collateral estoppel. Specifically, they contend that Timothy Vuyanich's conviction for Public Nuisance at CP-65-0003869-2018 prevents the Court from examining the claims raised in the Complaint. Collateral estoppel, or issue preclusion, "prevents parties from litigating again the same issues when a court of competent jurisdiction has already adjudicated the issue on its merits, and a final judgment has been entered as to those parties and their privies." *Witkowski v. Welch*, 173 F.3d 192, 198 (3d Cir. 1999) (citing *Schroeder v. Acceleration Life Ins. Co.*, 972 F.2d 41, 45 (3d Cir. 1992)). Collateral estoppel promotes judicial efficiency, fairness, and spares "parties of the cost and vexation of multiple lawsuits." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (internal citations omitted).

Whether an issue is collaterally estopped is dependent on four requirements: (1) the issue decided in the prior adjudication must be identical with the one presented in the later action; (2)

4

there must have been a final judgment on the merits; (3) the party against whom collateral estoppel is asserted must have been a party or in privity with the party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in the prior adjudication. *Witkowski*, 173 F.3d at 198 (citations omitted).

There are—at this stage—a number of issues with respect to the Smithton Defendants' and the South Huntingdon Defendants' invocation of collateral estoppel that preclude the Court from finding the doctrine applicable.

First, the claims Plaintiffs assert in this matter do not appear to present identical issues as those that were adjudicated in Timothy Vuyanich's criminal case at CP-65-0003869-2018. That criminal prosecution looked only to the narrow statutory provisions of Pennsylvania statutes governing Public Nuisance (18 Pa.C.S.A. § 6504), Abandoning a Vehicle on Public or Private Property (75 Pa.C.S.A. § 3712(b)), and Discarding Icebox in Place Accessible to Children (18 Pa.C.S.A. § 6502(a)). On May 29, 2020, Timothy Vuyanich was convicted of Public Nuisance, which was graded a second degree misdemeanor. (ECF No. 79-5). The Public Nuisance statute provides as follows:

> Whoever erects, sets up, establishes, maintains, keeps or continues, or causes to be erected, set up, established, maintained, kept or continued, any public or common nuisance is guilty of a misdemeanor of the second degree. Where the nuisance is in existence at the time of the conviction and sentence, the court, in its discretion, may direct either the defendant or the sheriff of the county at the expense of the defendant to abate the same.

18 Pa. C.S. § 6504.

In comparison to the claims at issue in this case (*see* ECF No. 1, pp. 23-44), the question of whether Timothy Vuyanich was guilty of violating the Public Nuisance statute is far narrower in scope. The only readily apparent overlap is that both cases arose from issues relating to the

personal property stored on the property and its ultimate removal. But even the overlap vis-à-vis the cleanup of the property is called into question for the collateral estoppel analysis based on the timeline of the allegedly actionable conduct in this case. Specifically, while the Public Nuisance statute provides that a court may, *at time of conviction or sentence*, order the nuisance to be abated by the defendant or the county sheriff, that is not what is pled to have happened in this case. (emphasis added). Rather, Plaintiffs allege that the cleanup of their property began on July 9, 2019–ten months before Timothy Vuyanich's criminal conviction–and that conviction "does not erase the tortious manner in which Plaintiffs' personal items were removed". (ECF No. 1, ¶ 91; ECF No. 87, p. 27). And, no sheriff was ever involved in abating the nuisance.

Second, one of the central questions in determining whether collateral estoppel should apply is if Plaintiffs had a full and fair opportunity to present their claims in prior litigation. Carol Vuyanich was not involved in Timothy Vuyanich's criminal case. Thus, it cannot be said that she ever had a full and fair opportunity to present her claims. As to Timothy Vuyanich, the Court has no information before it upon which it could even begin to conclude that during his criminal case, he voiced his position and confronted the witnesses, evidence, and arguments offered by each of the Defendants involved in this matter. In some instances, "[a] finding in a prior criminal proceeding may estop an individual from litigating the same issue in a subsequent civil proceeding." *James v. Heritage Valley Fed. Credit Union*, 197 F. App'x 102, 105 (3d Cir. 2006) (citing *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568–69 (1951) ("such estoppel extends only to the questions 'distinctly put in issue and directly determined' in the criminal prosecution." (citation omitted)). But that is not the case here. Material issues of fact regarding what occurred prior to and during the criminal prosecution of Timothy Vuyanich remain to be resolved.

The Court has "broad discretion to determine when [collateral estoppel] should be applied." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 651 (1979). Viewing the information before it and the inferences to be drawn therefrom in the light most favorable to Plaintiffs, the Court cannot find that collateral estoppel applies.

### B) Judgment in favor of Defendants is not warranted on Plaintiffs' due process, taking, and illegal search claims – Counts I through IV.

Count I, Plaintiffs' due process claim, is directed at Smithton Borough, South Huntington Township, and Chief Natale. (ECF No. 1, pp. 23-28). One of Plaintiffs' illegal search claims, Count II, is directed at Smithton Borough, Chief Natale, and Patrolman Marsico, while the other illegal search claim, Count IV, is directed at Smithton Borough, Chief Natale, South Huntington Township and Supervisors Troup, Jennewine, and Gates. (*Id.*, pp. 29-34, 38-41). Count III, the taking claim, is only directed at Smithton Borough. (*Id.*, pp. 34-38).[4]

In seeking judgment in their favor at Count I, the South Huntingdon Defendants argue that "[a]s a result of the public nuisance conviction, the Vuyaniches' procedural due process claim against South Huntingdon Township fails because nuisances are not constitutionally protected property." (ECF No. 86, p. 13). They also contend that Plaintiffs' illegal search claim at Count IV fails as a result of Timothy Vuyanich's conviction at CP-65-0003869-2018. (*Id.*, pp. 15-16). More specifically, they argue that the determination that the property was a public nuisance served

---

[4] Plaintiffs' claims are brought under 42 U.S.C. § 1983, which provides a cause of action against any person who, acting under the color of state law, deprives another of his or her federal rights, and, under certain circumstances, the municipal employer and/or supervisor of such a person. To obtain relief under § 1983, a plaintiff must make a two-prong showing: (1) that s/he suffered a violation of a right secured by the Constitution and laws of the United States; and, (2) that the alleged deprivation was committed by a person acting under the color of state law. *See Karns v. Shanahan*, 879 F.3d 504, 520 (3d Cir. 2018) (citations omitted).

as a deprivation of Plaintiffs' privacy interests in the property and privileged any entry onto the property, including any search.

The Smithton Defendants raise the same arguments as to Counts I, II and IV against them. (*See* ECF No. 80, p. 10) ("The state court judgment of conviction precludes Plaintiffs from pursuing their claims as it establishes that they had no predicate possessory right or interest in the allegedly valuable property, which right or interest in the allegedly valuable property, which right or interest is essential to their claims in Counts I, II and III."); (*See also id.*, p. 14) ("Similarly, Plaintiffs' Fourth Amendment unreasonable seizure claim requires a showing of a "possessory interest" in the property which is the subject of the seizure, as well as "some meaningful interference" with that interest."); ("The conclusive finding of a nuisance is also fatal to Plaintiff's Fifth Amendment takings claims as there is no "taking" deserving of compensation where property is seized or destroyed to abate a nuisance.")). Alternatively, they argue that: (1) Plaintiffs' Fourteenth Amendment due process claims fail because "Plaintiffs received notice of a charge that they were maintaining a nuisance on their property," and they received twenty days' notice that the nuisance would be removed (*Id.*, p. 14); (2) Plaintiff's procedural due process claims fail because they received an adequate post-deprivation remedy (*Id.*, pp. 15-16); and (3) Plaintiffs' illegal search claims fail because "the 'seizure' of items pursuant to a court order was reasonable as a matter of law." (*Id.*, pp. 17-18).

The Court's examination of the pleadings does not lead it to the conclusion—at this point—that Plaintiffs are unable, as a matter of law, to prevail on their claims. Material issues of fact remain to be resolved that preclude the Court from entering judgment in favor of Defendants as to Counts I through IV. The merits of Plaintiffs' claims simply cannot be fairly and fully decided on the pleadings alone.

As an initial matter, as discussed above, the Complaint pleads that the allegedly actionable conduct occurred between July and October 2019. (ECF No. 1, ¶ 133). This was months before Timothy Vuyanich's conviction for Public Nuisance on May 29, 2020. Yet, Defendants rely on that conviction as the determination, as a matter of law, that the Vuyaniches' property was a nuisance and could be legally abated by public authorities. (ECF No. 80, p. 12) (quoting 18 Pa.C.S.A. § 6504; "the court, in its discretion, may direct either the defendant or the sheriff of the county at the expense of the defendant to abate the [public nuisance]"). The Court is simply unwilling to entertain such an argument and enter judgment in favor of Defendants without the benefit of a more fully developed record. Furthermore, the Court finds a material factual dispute exists about what happened at the June 18, 2019, status conference in the Westmoreland County Court of Common Pleas and whether it afforded Plaintiffs sufficient due process. Also, the parties vehemently dispute whether unreasonable and warrantless searches of Plaintiffs' property occurred, and the extent of the various Defendants' involvement. Plaintiffs argue that personal property was seized (and then destroyed, appropriated, or sold) that was not within the scope of the nuisance. And, the record is simply insufficient for the Court to make any determination regarding post-deprivation due process for Plaintiffs as to their seized property.

For these reasons, the Court concludes that judgment is not warranted on Counts I through IV. Plaintiffs have sufficiently set forth violations of rights secured by the Constitution and laws of the United States. The parties are free to explore the contours of Plaintiffs' claims during discovery and reassert their positions at the summary judgment stage.

> 1. **Plaintiffs have adequately pled *Monell* claims against Smithton Borough and South Huntington Township.**

A municipal entity, such as Smithton Borough and South Huntington Township, cannot be held liable pursuant to § 1983 under the theory of *respondeat superior*. *Monell v. Dep't of Social*

*Services of New York*, 436 U.S. 658, 691 (1978). "[I]t is when execution of a [municipality's] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. Municipal entities may only be held liable under § 1983 on (1) an express municipal policy, such as an ordinance, regulation, or policy statement, *see id.*, (2) a "widespread practice, that although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage' with the force of law," *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)), or (3) the decision of a person with "final policymaking authority." *See Praprotnik*, 485 U.S. at 123; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986). A municipality may be held liable under § 1983 only when the enforcement of the municipal policy or practice was the "moving force" behind the violation of a plaintiff's federal protected right. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 400 (1997); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-89 (1989).

      The Court's review of Plaintiffs' Fourteenth Amendment due process claim reveals that it is predicated on South Huntington's designation of Smithton Borough (and, by extension, Chief Natale) as its final policymaker for bringing charges concerning the property's condition. (ECF No. 1, ¶¶ 28, 30-31, 152-54). There are sufficient allegations that Chief Natale reported to and acted on behalf of Smithton Borough with regard to the Property's condition. (*Id.*, ¶¶ 41, 47-48, 50-52, 54-56, 65, 72, 89, 94-98, 103-04, 106-07, 116-21, 123, 132). When Plaintiffs' allegations are viewed in the light most favorable to them, they state a plausible claim that Smithton Borough and Chief Natale, exercising South Huntingdon's final policymaking authority over charges regarding the property's condition, violated Plaintiffs' procedural due process rights. The Court

concurs with Plaintiffs that their "chain of legal policymaking authority and proximate causation," adequately states a Fourteenth Amendment *Monell* claim against both municipalities. Nothing in the pleadings submitted to the Court can lead it to definitely conclude that Defendants are not liable for the misconduct alleged. It will not grant judgment in favor of the Borough of Smithton and South Huntingdon Township. A more fully developed record will allow the Court to better evaluate the Fourteenth Amendment *Monell* claims against Smithton Borough and South Huntingdon Township should the parties reassert their challenges to Plaintiffs' claims at the summary judgment stage.

As to Plaintiffs' *Monell* claim against South Huntingdon Township for violating their Fourth Amendment rights, the Court finds that it is sufficient to proceed to discovery. It will not grant judgment in favor of South Huntingdon Township. Plaintiffs allege that the Supervisors (who had final policymaking authority) entered their property on September 27, 2019, without a warrant and without Plaintiff's permission to search and inspect their personal effects. (ECF No. 1, ¶¶ 123, 125-30, 248). Based on the information in the pleadings, the Court finds that there is a material dispute between the parties as to whether the Supervisors actually had permission to enter the property. Discovery will ultimately reveal the merits of this particular claim.

### 2. The Supervisors, Chief Natale and Patrolman Marsico will not be terminated as parties.

Sufficient information exists in the pleadings to allow the claims against the Supervisors, Chief Natale and Patrolman Marsico to proceed through discovery. Plaintiffs have alleged sufficient personal involvement by each of these Defendants. (*See* ECF No. 1, ¶¶ 47-48, 51-52, 55-56, 65, 72, 89 94-98, 102-11, 116-22, 123, 125-31, 132-33). More precise evidence as to the contours of their involvement in the alleged constitutional violations will be obtained through

discovery. At the summary judgment stage, these Defendants can reassert their arguments as to why judgment should be entered in their favor.

Lastly, the Court will leave to another day the question of whether Chief Natale and Patrolman Marsico are entitled to qualified immunity.[5] They have the burden of establishing their entitlement to qualified immunity, *see Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021), and the record before the Court does not allow it to conclusively determine whether or not they violated any of Plaintiffs' constitutional rights, and whether those rights were clearly established. The Court requires the development of an evidentiary record before conclusively determining as a matter of law whether or not these law enforcement officers can be shielded by qualified immunity.

### III. CONCLUSION

For the reasons set forth herein, the Court will deny the motions of the Smithton Defendants and the South Huntingdon Defendants by Order of Court to follow. The pleadings must be reviewed in the light most favorable to Plaintiffs. Many factual disputes exist that warrant further development through discovery. Plaintiffs will need to provide facts to substantiate the allegations in their Complaint if they hope to prevail.

BY THE COURT:

*/s/ William S. Stickman IV*
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

Dated: 5-25-22

---

[5] Qualified immunity shields government officials, including police officers, from liability for civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). To determine whether qualified immunity applies in this case, the Court must conduct a two-part inquiry, considering (1) whether Chief Natale and/or Patrolman Marsico violated a constitutional right and (2) whether that right was clearly established. *See El v. City of Pittsburgh*, 975 F.3d 327, 334 (3d Cir. 2020); *see also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (affording courts discretion to decide which step of the qualified immunity analysis to address first).